IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Reginald C. Sweat, #257472, | ) | CIVIL ACTION NO. 9:10-2083-JMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Darren Reiten, Josh Tweety, Bruce Miller, | ) | |
| Sgt. Albury Rinnick, Cpt. Daniel Dubose, | ) | |
| and Sgt. Sandra Kirckland, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Plaintiff filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on December 8, 2010. Plaintiff also filed a "Declaration" in support of this motion on December 15, 2010, and an additional statement in support on December 22, 2010. The Defendants filed a memorandum in opposition to the Plaintiff's motion on December 29, 2010.

The Defendants then filed their own motion for summary judgment on January 11, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 12, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond



– 1 –

adequately, the Defendants' motion may be granted, thereby ending his case.

Plaintiff thereafter filed a response in opposition to the Defendants' motion on January 18, 2011, a supporting "declaration" on January 21, 2011, an additional response in opposition on January 24, 2011, and an additional "Declaration" on January 28, 2011. The Defendants then filed a reply on February 3, 2011, to which the Plaintiff filed a sur reply on February 11, 2011.

These motions are now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified complaint[2] that on February 13, 2010 he was being escorted with other inmates to the "pill line". Plaintiff alleges that he paused to place his mail in the mailbox, and then attempted to catch up with the other inmates and officer, who had kept going. Plaintiff alleges that he uses a walking cane because of poor balance from a back injury which (apparently) slowed him up, resulting in the Defendant Miller (a correctional officer) holding up the other inmates and stating "we have one playing games . . . ." Plaintiff alleges that when he responded that it was not his fault, Miller said "Just shut up and get your meds". Plaintiff alleges that he told Miller that he was a grown man and that Miller could not tell him to shut up, and Miller

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Both sides have filed motions for summary judgment. As these motions are dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



– 2 –

responded that if Plaintiff did not shut up he would spray Plaintiff with mace. Plaintiff alleges that he told Miller that he knew his "freedom of speech rights", and that Miller could not spray him for disagreeing with him [Miller]. Plaintiff alleges that Miller then removed his mace and shook it, and told Plaintiff that if he did not shut up he was going to spray him because he had the right to spray Plaintiff if he felt threatened. Plaintiff alleges that he told Miller he was not threatening him, and that if Miller sprayed him he would "have [his] job". Plaintiff alleges that Miller then placed his mace back in the holder and told Plaintiff to "Just get your meds."

Plaintiff alleges that as they were walking back to the unit he and Miller continued to exchange words and when they got inside the sally port Miller started yelling at Plaintiff, telling Plaintiff to give him [Miller] his ID. Plaintiff alleges that he then "threw my ID to the wall", at which time Miller "sprayed" him and "pushed me to the floor jumping on my back with his knee . . . ." Plaintiff alleges that the "screamed" that Miller was hurting his back, and that after being handcuffed he continued to "scream in pain for help" as the Defendants Reiten and Tweety both "stood by".

Plaintiff alleges that Miller told him to get up, but that when he attempted to get up he felt a sharp pain in his waist and fell to the floor. Plaintiff alleges that Miller then grabbed his arm and began dragging him to the front door, where they met the Defendant Rinnick (a sergeant). Plaintiff alleges that Rinnick grabbed his right arm and yelled at him to get up, even though Plaintiff "screamed" that he had pain in his back. Plaintiff alleges that he "tried to stand and walk but they handled me roughly . . . .", and that he again fell "to the icy concrete right outside the Unit . . . ." Plaintiff alleges that Rinnick then placed his knee in his back and applied pressure, while Plaintiff "screamed" in pain and stated he needed a stretcher or a wheel chair. Plaintiff alleges that the



Defendant Dubose (a captain) then told him that if he did not walk he would be "sprayed again".

Plaintiff alleges that when he was able to get his balance the Officers raised his handcuffs behind his back, forcing him into a cramped position, and forced him to walk "hunched over in pain". Plaintiff also alleges that at one point they stopped so the Defendant Miller could get a better grip "in order to apply even more pressure" and cause more pain. Plaintiff alleges that the Defendant Kirckland (a sergeant) was also "on the scene and never stopped this treatment . . . ." Plaintiff seeks monetary damages. See generally, Verified Complaint.

As attachments to his motion for summary judgment, Plaintiff has submitted a copy of educational materials/care instructions he received (apparently) after a fall he experienced in May 2008 (Plaintiff's Exhibit A-1); a copy of an MRI or x-ray Plaintiff obtained on April 16, 2009 finding some minimal arthritic changes involving the lower cervical region without any obvious acute fractures (Exhibit A-2); a Patient Visit summary from May 12, 2008 (Exhibits A-3 through A-4); an SCDC health services medical summary dated November 6, 2009 (Exhibit A-5); records of SCDC medical encounters from November 2009 (Exhibit A-6); a copy of Responses to Interrogatory Requests by the Defendant Miller, in which Miller states that on February 13, 2010 Plaintiff threw his institution identification card at Miller's face and otherwise denied Plaintiff's claims (Exhibit A-7); a copy of a "Restraint Devices" memorandum from June 1, 2006 (Exhibit A-8), a copy of a Sick Call Request dated February 13, 2010 wherein Plaintiff is requesting to be seen by a physician (Exhibit A-9); another Sick Call Request dated June 14, 2010 wherein Plaintiff requests immediate attention for severe pain and fractures in his ribs (Exhibit A-10); a Sick Call Request dated February 17, 2010 wherein Plaintiff is requesting some Ibuprofen (Exhibit A-11); a copy of an Incident Report dated February 13, 2010 detailing the events in question (Exhibit A-12);



– 4 –

a copy of an SCDC Medical Summary from February 2010 (Exhibit A-17)[3] and an additional SCDC

Medical Summary from February 2010 (Exhibit A-18).

In his "Declaration" filed December 15, 2010, Plaintiff attests[4] that an expert witness

would testify that, based on his injuries, excessive force was used.[5]  Plaintiff also states that his

wrists were red and bruised and that he suffered spasms and complained of pain from February 13,

2010 through February 24, 2010, but that no nurse checked to see any signs of pain.  Plaintiff has

attached to his "Declaration" as Exhibit B-2 a copy of an SCDC Medical Summary from February

13, 2010, following the alleged excessive use of force.  This medical summary states:

> [Plaintiff] ambulated into medical with steady gait.  [Plaintiff] awake, alert, and
> oriented x4.  MM pink and moist.  Sclera red.  RESP even and non-labored skin
> warm and dry to touch.  No edema, discoloration or redness noted to back or wrists.
> No deformities noted.  No increase in tenderness to back when palpated.  Good ROM
> to all extremities.  No scratches or other red marks noted to body.

See, Exhibit B-2.

As attachments to his statement filed December 22, 2010, Plaintiff has attached a

copy of a Report on the Use of Force dated February 13, 2010 (Exhibit C-1).  This report states that

Plaintiff took his identification card and threw it at the Defendant Miller, striking Miller in the face.

This report further states that Miller then administered "Top Cap" chemical munition to Plaintiff's

facial area, following which Miller gave Plaintiff a directive to lie down on the floor.  The report

---

[3]There are no Exhibits A-13 through A-16.

[4]Although this document has not been sworn to before a notary public, Plaintiff does state on the line above his signature "I declare under penalty of perjury of the law that the foregoing statements are true and correct," which is sufficient.  Zainalian v. Memphis Bd. of Education, 3 Fed.Appx. 429, 431 (6th Cir. 2001); see also 28 U.S.C. § 1746.

[5]Plaintiff has identified no expert witness who will be testifying on his behalf, nor has Plaintiff submitted any affidavit or deposition testimony from an expert witness.



indicates that Plaintiff complied with this directive, and he was placed in hand cuffs, with no other force being used.  Plaintiff has also submitted a sworn statement from another inmate (Milhouse), in which Milhouse states that on February 13, 2010 he was standing in the doorway and saw Plaintiff drop his ID card on the floor and tell Miller that if he wanted it, "there it is".  Milhouse attests that Miller then sprayed Plaintiff with Top Cap, pushed him to the floor, and jumped on his back.  Milhouse states that Plaintiff told Miller that he had back problems, and that Miller and Sergeant Rinnick then drug the Plaintiff outside.  Milhouse attests that he went to his room window and heard Plaintiff say that he had back problems "over and over again" as Rinnick yelled for a stretcher, but that Captain Dubose walked up saying something he could not hear.  Milhouse attests that Rinnick and Miller then forced Plaintiff's arms up behind his back and forced him to walk, while Plaintiff "screamed in pain . . . ."  See generally, Milhouse Declaration.

In support of the Defendants' motion for summary judgment, the Defendant Bruce Miller has submitted an affidavit wherein he attests that he is a correctional officer at the Kershaw Correctional Institution, and that he has attached the SCDC Incident Report and SCDC Use of Force Report related to the incident at issue to his Affidavit as Exhibits A and B, respectively.  Miller attests that on or about February 13, 2010, he was assigned to escort Plaintiff from the pill line back to his cell when Plaintiff began using foul language and became confrontational.  Miller attests that Plaintiff was given several directives to calm down, but continued to engage in inappropriate behavior.  Miller further attests that upon asking Plaintiff for his identification card, Plaintiff took his card from around his neck and threw it at Miller, striking him in the face.  Miller attests that he perceived Plaintiff's actions as a threat and administered a quick burst of chemical munitions to Plaintiff's facial area as he asked SCDC Officer Darren Reiten to call for backup.  Miller attests that



he then secured the Plaintiff with the help of Officer Reiten using handcuff restraints in accordance with SCDC policy and procedure, that Plaintiff followed his directive to lie down, and that once properly secured he turned Plaintiff over to Sergeant Aubrey Rinnick with no other force being used. Miller attests that Plaintiff was then escorted to a holding cell where he received a medical evaluation.

Miller attests that Plaintiff's injuries, if any, were superficial in nature and limited to the use of chemical munitions. Miller further attests that Plaintiff was charged with refusing to obey orders following this incident, and that on or about February 23, 2010 Plaintiff was charged with the willful striking of an officer and was found guilty of this charge. See also Exhibit C to Miller's Affidavit. Miller attests that the amount of force applied while escorting the Plaintiff was applied in good faith to reasonably maintain or restore discipline. See generally Miller Affidavit, with attached Exhibits.

The Defendant Josh Twitty [as spelled by the Defendant in his Affidavit] has provided an affidavit wherein he attests that he is a correctional officer at the Kershaw Correctional Institution, and that he has attached a copy of his SCDC Incident Report related to the altercation that occurred on February 13, 2010 to his affidavit as Exhibit A. Twitty attests that on or about February 13, 2010 he observed Plaintiff yelling and using foul language toward Officer Miller, and that he observed Miller give Plaintiff several directives to calm down due to security concerns associated with Plaintiff's behavior. Twitty attests that he also observed Miller administer a quick burst of chemical munitions to Plaintiff's facial area as well as ask Officer Reiten to call First Responders for backup to help restore discipline and control the situation. Twitty attests that he then observed Miller and Reiten properly secure Plaintiff using appropriate techniques and handcuff restraints, with



no other force being used. Twitty attests that Plaintiff's injuries as a result of this incident, if any, were superficial in nature and were limited to the use of chemical munitions, that the amount of force applied by Miller and Reiten while securing the Plaintiff was applied in a good faith effort to reasonably maintain or restore discipline, and that he is not aware of any incident in which any Defendant verbally or physically assaulted the Plaintiff.  See generally, Twitty Affidavit, with attached Exhibits.

The Defendant Daniel Dubose has submitted an affidavit wherein he attests that he is a Captain at the Kershaw Correctional Institution, and that he has reviewed the SCDC Incident Report related to the altercation at issue, which is attached as Exhibit A to his affidavit.  Dubose attests that he first became aware of the incident involving the Plaintiff upon receiving a call from Officer Reiten for backup though the Kershaw Correctional First Responders Team, of which he is a member.  Dubose attests that upon arriving outside of the sally port area, he observed that Plaintiff had been properly secured using standard handcuff restraints by Miller and Reiten, but that Plaintiff thereafter continued to yell foul language and threatened SCDC personnel while being escorted by the First Responders Team to the Kershaw Special Management Unit for security purposes and personal safety.  Dubose also attests that he observed the Plaintiff begin to "act out" by throwing himself on the ground while being escorted by himself and other members of the First Responders Team, and that he is not aware of any instance in which any Defendant verbally or physically assaulted Plaintiff as alleged in the complaint.  Dubose attests that the amount of force used, if any, by himself and the other members of the First Responders Team was applied in a good faith effort to reasonably maintain or restore discipline, and that Plaintiff's injuries, if any, appeared to be superficial in nature and were limited to the use of chemical munitions.  Dubose further attests that



Plaintiff was provided immediate medical attention following the incident.  See generally, Dubose Affidavit, with attached Exhibit.

The Defendants have also submitted an affidavit from Pamela Phillips, who attests that she is a registered nurse employed by the Department of Corrections.  Phillips attests that at all relevant times she was assigned to provide medical and health care services to inmates incarcerated at the Kershaw Correctional Institution, and that she has reviewed Plaintiff's related medical records following the incident at issue.  Phillips attests that on February 13, 2010, Plaintiff was presented by SCDC staff for a medical evaluation following an incident in which he was gassed with chemical munitions.  Plaintiff further stated that he had been assaulted by SCDC staff during the incident, and complained of back pain "around his belt line".  Phillips attests that she personally examined Plaintiff for any signs of trauma, bruising, restricted range of motion, or inflamation, and was unable to find any sign of trauma, bruising, scratches, or restricted range of motion or inflamation.  Further, Plaintiff ambulated with a steady gait, showed no signs of discoloration or redness to his back or wrists, and there was no increased tenderness to Plaintiff's back when palpated.  Phillips attests that she instructed Plaintiff to apply a warm compress to his back as needed, and then observed Plaintiff walk out of the examination room with minimal difficulty.  Phillips further attests that she did not observe any evidence that Plaintiff would suffer from future medical complications as a result of the incident alleged in his complaint, and that Plaintiff's injury, if any, appeared to be de minimis in nature.  Phillips attests that an accurate summary of Plaintiff's medical evaluation with respect to the alleged incident is attached to her affidavit as Exhibit A.  See generally, Phillips Affidavit, with attached Exhibit.

The Defendants have also submitted an affidavit from Pamela Hough, Grievance



Coordinator with the South Carolina Department of Corrections. Hough has attached copies of Step 1 and Step 2 Grievances Plaintiff filed with respect to this incident, details the grievance procedure at the Institution, and attests that Plaintiff failed to complete this grievance process prior to filing this lawsuit. See generally, Hough Affidavit, with attached Exhibits.

As attachments to his "Declaration" filed January 21, 2011 (in which Plaintiff reiterates the allegations of his complaint) Plaintiff has attached copies of interrogatory responses he received from the Defendants, a copy of a letter from defense counsel, a copy of the Incident Report filed by the Defendant Miller, and a copy of his Disciplinary Report and hearing record. See Plaintiff's Exhibits E-1 through E-4. Plaintiff has also provided another copy of the SCDC Health Services Medical Summary from February 13, 2010 (Plaintiff's Exhibit H-1), as well as copies of court orders or opinions (Plaintiff's Exhibits H-2 and H-3). In yet more filings, Plaintiff has submitted additional copies of Defendants' responses to his interrogatories, Sick Call Requests, the Incident Report of February 13, 2010, the Report on Use of Force filed by the Defendant Miller, his x-ray report from April 22, 2009, copies of SCDC Health Services Medical Summaries, some grievance documents, partial copies of Dubose's and Reynolds' affidavits, and a copy of a letter from defense counsel. See Plaintiff's Exhibits G-1(A) through G-24(C)). Finally, Plaintiff has presented copies of his grievance documents. See Plaintiff's Exhibits H-5 through H-6.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the



pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).

Once the moving party makes this showing, however, the opposing party must respond to the motion

with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d

872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing

a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see

Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal

construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts

which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material

fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after

careful review and consideration of the arguments and evidence presented, the undersigned finds and

concludes that the Defendants are entitled to summary judgment in this case.

## I.

Defendants first assert, inter alia, that this action should be dismissed because

Plaintiff failed to exhaust his administrative remedies prior to filing this law suit. Pursuant to 42

U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section1983

of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." However, it is the

Defendants who have the burden of showing that Plaintiff failed to exhaust his administrative

remedies; see Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir.

2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled

and proven by the Defendant]; and the undersigned finds for the reasons set forth hereinbelow after

review of the materials submitted that the Defendants are not entitled to dismissal of this case on this



ground at this time.

Defendants argue that this case should be dismissed because Plaintiff had not received a final institutional answer or determination concerning his grievance prior to filing this lawsuit.[6] This is normally a proper ground for dismissal of a prisoner lawsuit. See Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]; Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]. However, while Plaintiff does not dispute that he had not completed the grievance process prior to filing this lawsuit, he argues that at the time the lawsuit was filed his grievance had been pending for over six months and he was therefore entitled to proceed with this case. Defendants argue that six months had not passed; however, the exhibits provided to the Court show that Plaintiff filed his grievance on February 13, 2010 (noted "received" on February 17, 2010), and his complaint is dated August 8, 2010, almost exactly six months later. See Plaintiff's Exhibit H-5.

In any event, under the "action taken" part of the Plaintiff's Step 1 grievance, Hough has written:

---

[6]In addition to the Affidavit provided by the Defendants detailing the SCDC Grievance procedure in effect at Plaintiff's institution, this Court can also take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step One), the inmate may then appeal the Warden's decision by filing a Step Two appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc., 425 F.2d 1296; see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006).



> A copy of this grievance has been forwarded to the Division of Investigations for possible review due to the allegations made in the grievance. The time frames stated for grievances are not applied to grievances sent to the Division of Investigations. At some time in the future you will be notified of the decision on this grievance.

See Plaintiff's Exhibit H-5.

The exhibits provided to the Court further show that Plaintiff's Step 1 grievance was thereafter denied on March 15, 2010, and that Plaintiff filed his Step 2 grievance on March 17, 2010. See Hough Affidavit, Defendants Exhibits A and B. Hence, by August 8, 2010 (the date of Plaintiff's Complaint), almost five months had passed since Plaintiff had filed his Step 2 grievance, and Plaintiff's Step 2 grievance was not finally denied until November 4, 2010, another three (3) months later. Hough Affidavit, attached Exhibit B.[7]

Considered in the light most favorable to the Plaintiff, and in order to allow for a fuller discussion of the merits of Plaintiff's underlying claim, the undersigned finds that the evidence presented gives rise to a genuine issue of fact as to whether Plaintiff attempted to exhaust his administrative remedies but did not receive a timely response sufficient to survive summary judgment on this ground. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829,

---

[7]Plaintiff was not required to thereafter appeal the denial of a Step 2 grievance to the Administrative Law Court in order to exhaust his administrative remedies for purposes of this lawsuit. See Johnson v. Ozmint, 567 F.Supp. 2d 806, 820, n.5 (D.S.C. 2008); Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step II grievance exhausts administrative remedies and § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007).



833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable]; Anderson, 408 F.3d at 683 [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant].

## II.

Turning to the merits of Plaintiff's claim, as employees of the Department of Corrections, all of the Defendants are subject to suit for damages under § 1983 in their individual capacities. However, although subject to suit, Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether any named Defendant violated his constitutional rights.

When reviewing a claim of constitutionally excessive force, the Court should consider 1) the need for the application of force, 2) the relationship between the need and the amount of force that was used, 3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them, 4) the efforts made to temper the severity of a forceful response, and 5) the extent of the injuries suffered by the prisoner. Whitley v. Albers, 475 U.S. 312, 321 (1986); Majette v. GEO Group, Inc., No. 07-591, 2010 WL 3743364, at * 6 (E.D.Va. Sept 22, 2010); see Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]. Here, the evidence (considered in the light most favorable to the Plaintiff) shows that Plaintiff and the Defendant Miller had been engaged in an extended verbal confrontation, culminating in Plaintiff throwing his identification card (either at Miller [according to Miller], at the wall [according to the Plaintiff], or on the floor [according to Plaintiff's witness]). According to the Plaintiff, it was at that time that Miller gave him a burst of "cap stun" spray, and he was forced to the ground and placed in handcuffs. Plaintiff alleges that he was then taken to the SMU with his



arms pinned behind his back, but he does not allege (nor does the evidence show) that Plaintiff was either struck by the officers or sprayed with any more chemical spray after he was placed in handcuffs.  While these facts (considered in the light most favorable to the Plaintiff) show that force was used against the Plaintiff, they are not sufficient to give rise to a genuine issue of fact as to whether *constitutionally* excessive force was used in this instance.

First, while being sprayed with a chemical spray is no doubt uncomfortable, the use of mace or pepper spray by prison officials is not in and of itself a per se violation of a prisoner's constitutional rights when used appropriately.  Williams v. Benjamin, 77 F.3d 763 (4th Cir. 1996); Peterson v. Davis, 551 F.Supp. 137 (D.Md. 1982), aff'd without op., 729 F.2d 1453 (4th Cir. 1984); Williams v. Dehay, Nos. 94-7114, 94-7115, 1996 WL 128422 **2-3 (4th Cir. March 21, 1996).  Indeed, a chemical spray is often used in order to *avoid* having to use physical force, and there is no evidence to show that the amount used here (27.0 grams) was anything more than minimal.  See Exhibit B to Miller Affidavit; Plummer v. Goodwin, No. 07-2741, 2010 WL 419927 at * 7 n. 4 (D.S.C. Jan. 29, 2010)[finding that 33.50 grams of chemical munitions used on Plaintiff was "a relatively small quantity and not constitutionally relevant."]; Townsend v. Anthony, No. 03-2528, 2006 WL 2076920 at * 9 (D.S.C. July 24, 2006)[finding 20 grams to be a small amount].

Further, the fact that Plaintiff concedes he was being confrontational and had hurled an object (either at Miller or in his vicinity) justifies a reasonable perception on the part of the prison guards that the situation could get out of hand,[8] and the fact that some amount of force was used on

---

[8]Although the finding in Heck v. Humphrey, 512 U.S. 477 (1994), does not bar Plaintiff from proceeding on his excessive force claim, Plaintiff was convicted of willfully striking an officer.  See Exhibit C to Miller Affidavit.  Therefore, the Court cannot assume Plaintiff's factual allegations to
(continued...)



an admittedly unruly inmate in order to place that inmate in handcuffs, with no evidence of Plaintiff

being struck or hit thereafter, is not evidence of a constitutionally excessive amount of force being

used.  Cf. Wilson v. Flynn, 429 F.3d 465, 469 (4th Cir. 2005)[Lack of evidence that officers used

any improper force after restraining a prisoner "distinguishes [Plaintiff's] case from many in which

we have held the Plaintiff has alleged an excessive force claim."]; Williams, 77 F.3d at 761 [because

prison officials are entitled to use appropriate force to quell prison disturbances, and because these

officials oftentimes must act under pressure without the luxury of a second chance, in order for a

prisoner to prevail on an Eighth Amendment claim he must demonstrate that officials applied force

maliciously and sadistically for the very purpose of causing harm]; see also Johnson v. Glick, 481

F.2d 1028, 1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in

the peace of a judge's chambers, violates a prisoner's constitutional rights"]; cf. Bell v. Wolfish, 441

U.S. 520, 540 (1979) ["[N]ot every malevolent touch by a prison guard gives rise to a federal cause

of action"].

        Finally, notwithstanding Plaintiff's general and conclusory claim that he suffered

physical injuries as a result of this incident, there is no objective evidence whatsoever to show that

Plaintiff received any injuries as a result of this incident.  To the contrary, the medical evidence

shows that Plaintiff did not suffer any injury as a result of this confrontation.  See Strickler v.

Waters, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical and mental

---

      [8](...continued)
be true for purposes of summary judgment to the extent those allegations, if proven, would
undermine the validity of his conviction.  Cf. Dyer v. Lee, 488 F.3d 876, 881-882 (11th Cir. 2007);
see also Christy v. Sheriff of Palm Beach County, Fla., 288 Fed. Appx. 658, 666 (11th Cir. 2008);
Baxter v. Crawford, 233 Fed. Appx. 912, 916 (11th Cir. 2007).



injury is inadequate to survive a motion for summary judgment]; <u>Silvia Dev. Corp. v. Calvert County, Md.</u>, 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)].  Although it is not required that Plaintiff show he suffered more than a <u>de minimis</u> injury to maintain an excessive force claim; <u>see</u> <u>Wilkins v. Gaddy</u>, 130 S.Ct. 1175, 1179-1180 (2010)[Noting that the notion  that significant injury is a threshold requirement for stating an excessive force claim was rejected in <u>Hudson</u>, 503 U.S. at 7]; the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry. <u>Wilkins</u>, 130 S.Ct. at 1179-1180 [holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim"], citing to <u>Hudson</u>, 503 U.S. at 9 (quoting <u>Johnson</u>, 481 F.2d at 1033); <u>see also</u> <u>Ellerbe v. Roach</u>, No. 08-3118, 2010 WL 3361703, at * 3 (E.D.N.C. Aug 24, 2010).  As noted, Plaintiff has failed to produce any evidence showing a discernible injury in this case.

       Therefore, while Plaintiff may conceivably have a state law claim arising from this incident, or some further administrative remedy he can pursue, the evidence before this Court is not sufficient to create a genuine issue of fact as to whether constitutionally excessive force was used under the circumstances in this case.  <u>See</u> <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]; <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S.



189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; <u>Baker v. McClellan</u>, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. Plaintiff's excessive force claim asserted as a constitutional violation should be dismissed.

<b><u>Conclusion</u></b>

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 3, 2011

Charleston, South Carolina



- 18 -

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

